# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | | |
|---|---|---|---|
| United States of America, | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | **Criminal Action Number** | |
| | ) | **16-00108-01-CR-W-RK** | |
| William H. Butler, | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE AND STATEMENT (Doc.

#13) filed on May 24, 2017 by defendant William H. Butler ("Butler"). On August 24, 2017, the

undersigned held an evidentiary hearing on Butler's motion. Butler was present and represented

by his counsel, Assistant Federal Public Defender Ronna Holloman-Hughes. The government

was represented by Assistant United States Attorney Justin Davids. At the evidentiary hearing,

testimony was given by two witnesses: Sergeant Kirk Beeman and Detective Josko Wrabec both

with the Sugar Creek, Missouri Police Department. Additionally, the following exhibits were

admitted into evidence:

| Number | Description |
|---|---|
| Gov't. Ex. 1 | Sugar Creek Mo. PD Permission-to-Search form |
| Gov't. Ex. 2 | Wrabec report – July 21, 2013 (19:01 hours) |
| Gov't. Ex. 3 | Wrabec report – July 21, 2013 (19:34 hours) |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned

submits the following:

## PROPOSED FINDINGS OF FACT

1.      On July 21, 2013, Kirk Beeman was a sergeant with the Sugar Creek Missouri Police Department and Josko Wrabec was a patrol officer with the Sugar Creek, Missouri Police Department.  Tr. at 3-4, 42.

2.      On that date, Sergeant Beeman had been contacted by his chief (Herb Soule) and was told that a complaint had been registered about suspected drug activity at a Sugar Creek apartment complex located at 411 North Sterling.  Tr. at 4-5, 30, 32, 43.

3.      After receiving the information, Sergeant Beeman and Officer Wrabec – in separate marked police vehicles – conducted some surveillance of the apartment complex beginning at approximately 4:00 p.m.  Tr. at 4-7, 30.

4.      While conducting the surveillance, Sergeant Beeman observed a car with several occupants pull up to the complex and park in the back alley.  Tr. at 8.

5.      The car's driver entered the complex and then left in his car after being in the apartment complex for less than a minute.  Tr. at 8, 31.

6.      Sergeant Beeman radioed Officer Wrabec and requested that he conduct a stop of the vehicle.  Tr. at 8, 31, 56.

7.      During the ensuing traffic stop, one of the car's occupants told officers that they had gone to the apartment complex and purchased a small amount of marijuana.  Tr. at 9.

8.      The occupant described the location of the apartment and said he bought the marijuana from a black male named "Will."  Tr. at 10, 44-45.

9.      Based on the information, Sergeant Beeman and Officer Wrabec decided to conduct a "knock and talk" at the described apartment.  Tr. at 10, 45.

10.     At approximately 7:34 p.m., Sergeant Beeman and Officer Wrabec (both in uniform) knocked on the door of Apartment 3 (the location described by the witness) of the apartment complex at 411 North Sterling.  Tr. at 11-13, 36, 45-46.

11.     The door was answered by Butler.  Tr. at 11-12, 32, 46.

12.     Butler stepped outside the apartment into the hallway and shut the door behind.  Tr. at 11, 13, 62.

13.     Sergeant Beeman explained to Butler that there were some indications that illegal drugs were being sold out of his apartment.  Tr. at 12, 32, 46-47, 64.

14.     Butler responded: "Man, all I have is a little bit in my pipe, and it's just for personal use."  Tr. at 14, 32, 46, 64.

15.     Butler confirmed that he lived in the apartment with his girlfriend and that both of them were on the lease.  Tr. at 13.

16.     Sergeant Beeman showed Butler a consent-to-search form and requested Butler to consent to a search of the apartment.  Tr. at 12, 14-15, 47; Gov't Ex. 1.

17.     Sergeant Beeman read the consent-to-search form out loud and asked Butler to sign.  Tr. at 16-17, 35, 48.

18.     In part, the form specifically provides that Butler was acknowledging that he had been informed of his "constitutional right not to have a search made of the premises and property."  Tr. at 17; Gov't Ex. 1.

19.     Butler initially responded to Sergeant Beeman by stating that he would go inside and retrieve the marijuana that he had and if the officers would return in 10 minutes "it will be gone."  Tr. at 18, 49-50.

20.     Butler then reached for the doorknob to go inside.  Tr. at 19, 33, 50.

21.     Sergeant Beeman then reached and stopped Butler from going back into the apartment.  Tr. at 19, 33, 50.

22.     Sergeant Beeman asked Butler if there were weapons or other individuals in the apartment.  Tr. at 19, 63.

23.     Butler said that he was home alone and had some swords hanging inside the doorway and "maybe a BB gun."  Tr. at 20.

24.     Sergeant Beeman then told Butler that he could not go back into the apartment until he consented to a search or refused to consent to a search.  Tr. at 20, 33, 51, 62.

25.     Butler responded: ""If I don't sign that form, you will just come back with a search warrant, and then [I will be] questioned, won't you?"  Tr. at 20, 34, 52.

26.     Sergeant Beeman stated that was a possibility.  Tr. at 20, 34.

27.     Butler then said: "I don't sell to nobody.  I smoke marijuana with friends sometimes.  I have some weed inside, but it's for my personal stash.  And I take a few Xanax."  Tr. at 20.

28.     Butler signed the consent-to-search form and was told by Sergeant Beeman that he could revoke the consent at any point.  Tr. at 21, 41, 52-53.

29.     Before entering the apartment, Sergeant Beeman asked Butler if he was a convicted felon and Butler indicated that he thought he had some "drug things and unlawful possession of a gun" in the past.  Tr. at 22.

30.     When Butler and the officers entered the apartment, Butler attempted to take a seat in a cushioned chair.  Tr. at 23, 54.

31.     Sergeant Beeman – after placing Butler on a couch – searched the area around the chair and found 163 grams of marijuana (in containers on an adjacent end table) and a loaded, silver-colored handgun (in the cushions of the chair).  Tr. at 24-28, 54.

32.     Officer Wrabec then placed restraints on Butler.  Tr. at 27, 54.

33.     Butler never revoked the consent to search.  Tr. at 27, 36, 40-41, 54.

## PROPOSED CONCLUSIONS OF LAW

Butler's motion to suppress asserts violations of the Fourth and Fifth Amendments and seeks to suppress all evidence seized and statements made by Butler during the law enforcement encounter at his apartment on July 21, 2013.  That encounter involved several different facets and phases, including the initial "knock and talk" in the hallway of Butler's apartment complex, the questioning of Butler during the "knock and talk," and the search of Butler's apartment.

The validity of the initial "knock and talk" with Butler is well-settled.  Indeed, a mere "knock and talk" approach often does "not even implicate the Fourth Amendment." *United States v. McDaniel*, 2017 WL 706630, op. at *4 (W.D. Mo. Jan. 19, 2017), *report and recommendation adopted,* 2017 WL 706627 (W.D. Mo. Feb. 22, 2017).   It is established that:

> Not all personal encounters between law enforcement officials and citizens fall within the ambit of the Fourth Amendment.  A consensual encounter between an officer and a private citizen does not implicate the Fourth Amendment.

*United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001).  *See also Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991) (Fourth Amendment jurisprudence makes "it clear that a

seizure does not occur simply because a police officer approaches an individual and asks a few questions"); *United States v. Richards*, 611 F.3d 966, 968-69 (8th Cir. 2010).

The courts have generally recognized that "[a] 'knock-and-talk' is an investigatory technique in which law enforcement officers approach the door of a dwelling seeking voluntary conversation and consent to search." *United States v. Cisneros–Gutierrez*, 598 F.3d 997, 1001 n.2 (8th Cir. 2010) (concluding that the technique is "reasonable and proper investigative strategy").   However, as with any consensual encounter or investigatory stop, the conduct of a "knock and talk" – while originally permissible may morph into an encounter raising substantial constitutional concerns.

In this case, in part, Butler argues that the "knock and talk" spawned incriminating statements made by Butler that must be suppressed under the Fifth Amendment of the United States Constitution.  To that end, the Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  With regard to this protection, the Supreme Court has found:

> The essence of this basic constitutional principle is the requirement
> that the [government] which proposes to convict and punish an
> individual produce the evidence against him by the independent
> labors of its officers, not by the simple, cruel expedient of forcing
> it from his own lips.

*Estelle v. Smith*, 451 U.S. 454, 462, 101 S. Ct. 1866, 1872 (1981).  However, as the Supreme Court has made clear on numerous occasions, the right against self-incrimination does not prohibit any and all statements made by suspects to law enforcement officers from being admissible in a criminal proceeding.  For example:

> [The Fifth Amendment] does not preclude a witness from
> testifying <u>voluntarily</u> in matters which may incriminate him, . . .
> for those competent and freewilled to do so may give evidence
> against the whole world, themselves included. . . .  Indeed, far from

being prohibited by the Constitution, admissions of guilt by
wrongdoers, if not coerced, are inherently desirable.

*United States v. Washington*, 431 U.S. 181, 186-87, 97 S. Ct. 1814, 1818 (1977) (*emphasis

added*).  The touchstone of such Fifth Amendment analysis is voluntariness.  *Dickerson v. United

States*, 530 U.S. 428, 434, 120 S. Ct. 2326, 2331 (2000) ("We . . . continue to exclude

confessions that were obtained involuntarily.").

With regard to statements made by a suspect during custodial interrogation by law

enforcement, the Supreme Court, in the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86

S. Ct. 1602 (1966), enunciated a special test for ascertaining voluntariness.  The reason for such

special treatment stems from the Supreme Court's recognition that custodial interrogations are

inherently coercive.  *Dickerson*, 530 U.S. at 435, 120 S. Ct. at 2331; *New York v. Quarles*, 467

U.S. 649, 654, 104 S. Ct. 2626, 2630 (1984).  Indeed, in *Miranda,* the Supreme Court observed

that custodial interrogations, by their very nature, generate "inherently compelling pressures

which work to undermine the individual's will to resist and to compel him to speak where he

would not otherwise do so freely."  *Miranda*, 384 U.S. at 467, 86 S. Ct. at 1624.  Consequently,

> To combat this inherent compulsion, and thereby protect the Fifth
> Amendment privilege against self-incrimination, *Miranda* imposed
> on the police an obligation to follow certain procedures in their
> dealings with the accused.

*Moran v. Burbine*, 475 U.S. 412, 420, 106 S. Ct. 1135, 1140 (1986). These procedures, now

almost universally familiar, include fully apprising a suspect of the prosecution's intention to use

his statements to secure a conviction and informing him of his rights to remain silent and to have

counsel present if he so desires.  *Miranda*, 384 U.S. at 468-70, 86 S. Ct. at 1624-26.

In this case, it is undisputed that Butler was not apprised of his *Miranda* rights during the

encounter with the law enforcement officers at his apartment on July 21, 2013.  Thus, the

question arises as to whether Butler was "in custody" and being interrogated. In analyzing the question, the Court breaks the encounter into two parts: before Sergeant Beeman stopped Butler from entering his apartment and after he did so. The Court finds that prior to Sergeant Beeman interceding to prevent Butler from opening his apartment door and entering his apartment, the encounter was consensual and non-custodial.

The Eighth Circuit has identified six common "indicia of custody" which tend to confirm or refute an atmosphere of custodial interrogation. *United States v. Axsom,* 289 F.3d 496, 500-01 (8th Cir. 2002). The indicia are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
>
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
>
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;
>
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
>
> (5) whether the atmosphere of the questioning was police dominated; and
>
> (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.* The Court has explained that the first three indicia are "mitigating factors" (*i.e.*, their presence mitigates against the existence of custody at the time of questioning) and the last three indicia are "aggravating factors" (*i.e.*, their presence aggravates the existence of custody). *Id.* However, the Court has emphasized that the six factors "are not exclusive." *Id.*

> A finding of custody does not require the factual circumstances of a case to present all indicia; and a particularly strong showing of

one factor may compensate for a lesser or non-existent showing of another factor.

*Id.* Examining the facts of this case, the Court concludes that the indicia simply do not support a finding of "in custody" during the initial discussions with Butler and, as such, statements made by Butler to the officers are not subject to suppression because of the *Miranda*.

After Sergeant Beeman stopped Butler from going back inside his apartment, however, the Court finds that the indicia of custody becomes stronger because a reasonable person in Butler's position would not feel that he was free to leave (since he had been prevented from leaving). As such, three statements made by Butler need to be considered:

(1)     Butler's statement that he was home alone and had some swords hanging inside the doorway and "maybe a BB gun" in response to Sergeant Beeman's question as to whether there were weapons or other individuals in the apartment.

(2)     Butler's statement: "I don't sell to nobody. I smoke marijuana with friends sometimes. I have some weed inside, but it's for my personal stash. And I take a few Xanax" made after Sergeant Beeman said that it was a "possibility" that a search warrant might be obtained if Butler refused to consent.

(3)     Butler's statement that he thought he had some "drug things and unlawful possession of a gun" in the past in response to Sergeant Beeman's question as to whether Butler was a convicted felon.

The Court will address each statement separately.

With regard to Sergeant Beeman's question about weapons or other individuals in the apartment, the Court finds that public safety concerns excepted the requirement for *Miranda* warnings. In *New York v. Quarles, supra*, 467 U.S. 649, 104 S. Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence." 467 U.S. at 655, 104 S. Ct. 2626. As the Eighth Circuit has made clear, in this context, protection of the

public safety includes protection of the police officers themselves. *United States v. Liddell*, 517

F.3d 1007, 1009 (8th Cir. 2008). Moreover:

> The [public safety] exception does not depend upon the subjective
> motivation of the questioning officers. Instead, the Court [in
> *Quarles*] adopted an objective standard: the exception applies
> when "police officers ask questions reasonably prompted by a
> concern for the public safety."

*Id.* (*quoting*, *in part*, *Quarles*, 467 U.S. at 656, 104 S. Ct. 2626).

In this case, the question came after Butler had made comments to the officers that

conceded he had marijuana in his apartment and he was willing to make it disappear if the

officers would come back in 10 minutes. Thereafter, in response to a request to consent to

search his apartment, rather than verbally responding, Butler tried to enter his apartment. Under

these particular circumstances confronting the officers, the Court finds that Sergeant Beeman's

question was prompted not by an effort to solicit testimony evidence from Butler but from

reasonable concerns for the safety of Officer Wrabec and himself – i.e., did the officers need to

worry that Butler was retreating to his apartment to obtain a weapon and/or alert an accomplice.

As such, a *Miranda* warning and waiver did not need to precede the question to Butler.

With regard to Butler's statement about his personal stash of marijuana and his use of

Xanax, the Court concludes that these statements were not the product of interrogation. Instead,

the Court finds that Butler's actual incriminating response was voluntary and spontaneous.

*Compare Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S. Ct. 1682 1689 (1980); *United States v.*

*Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992). In that regard, the Supreme Court has

unequivocally held:

> A voluntary statement made by a suspect, not in response to
> interrogation, is not barred by the Fifth Amendment and is
> admissible with or without the giving of *Miranda* warnings.

*Innis*, 446 U.S. at 299, 100 S. Ct. at 1689. *See also United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014) ("*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.") (*quoting United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997)); *United States v. Griffin*, 922 F.2d 1343, 1356-57 (8th Cir. 1990).

Finally, with regard to Butler's statement about his criminal record, the answer was in direct response to Sergeant Beeman's question. Moreover, "asking a suspect whether he had a criminal record . . . certainly amounts to 'express questioning' that 'police should know is reasonably likely to evoke an incriminating response.'" *United States v. Ray*, 690 Fed. Appx. 366, 372 (6th Cir. 2017) (*quoting*, *in part*, *Innis*, 446 U.S. at 300-01, 100 S. Ct. at 1689). *See also United States v. Randolph*, 2015 WL 8784554, at *3 (W.D. Mo. Dec. 15, 2015). The response provided by Butler was the result of custodial interrogation and, in the absence of any clear indication of Butler's waiver of his *Miranda* rights, the statement will be suppressed.[1]

The generally accepted validity of a "knock and talk" does not encompass searching someone's property. Such a rule recognizes that the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Indeed, without question, individuals possess a privacy interest in their property that is protected by the Fourth Amendment. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). As protection for the citizen from unwarranted government intrusion, the Fourth Amendment generally requires law enforcement to obtain a court-sanctioned search warrant based on

---

[1] The statement was made after Butler consented to a search of his apartment and, as such, does not impact the ensuing discussion of the Constitutionality of that search.

probable cause before undertaking a search of private property. *See*, *e.g.*, *Shade v. City of*

*Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000).

As made clear in the Fourth Amendment, however, the constitution does not forbid all

searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364

U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960). In many search and seizure scenarios, the question

of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued

warrant. In this case, law enforcement officers, of course, did not have a warrant to search

Butler's apartment. To that end, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior
> approval by judge or magistrate, are *per se* unreasonable under the
> Fourth Amendment – subject only to a few specifically established
> and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (*quoting Katz v. United States*,

389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). In the present case, the government seeks to

justify the search of Butler's apartment under an exception to the warrant requirement: consent.

It is established law that an exception to the warrant requirement of the Fourth

Amendment is consent to search. *Florida v. Jimeno*, 500 U.S. 248, 250-51, 111 S. Ct. 1801,

1803 (1991). In a typical consent-to-search case, the touchstone in analyzing a motion to

suppress is whether the consent was voluntary. In broad strokes, consent to search is voluntary if

it is "the product of an essentially free and unconstrained choice by its maker . . . rather than a

product of duress or coercion, express or implied." *Schneckloth v. Bustamante*, 412 U.S. 218,

227, 93 S. Ct. 2041, 2047-48 (1973). To assist a court in making this ultimate determination,

numerous factors relating to the person giving the consent and the environment surrounding the

consent have been articulated. For instance, with regard to a defendant who consents, courts

consider:

(1)     the defendant's age;

(2)     the defendant's general intelligence and education;

(3)     whether the defendant was under the influence of drugs or alcohol;

(4)     whether the defendant was informed of his *Miranda* rights prior to
        consent; and

(5)     whether the defendant had experienced prior arrests so that he was
        aware of the protections the legal system affords to suspected
        criminals.

*United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001).  With regard to the environment

surrounding consent, courts will examine whether the person who consented:

(1)     was detained and questioned for a long or short time;

(2)     was threatened, physically intimidated, or punished by the police;

(3)     relied upon promises or misrepresentations made by the police;

(4)     was in custody or under arrest when the consent was given;

(5)     was in a public or secluded place; or

(6)     either objected to the search or stood by silently while the search
        occurred.

*United States v. Mancias*, 350 F.3d 800, 805 (8th Cir. 2003).

        In this case, the Court concludes that Butler was an adult of seeming adequate

intelligence and education.  There is no evidence that Butler was under the influence of any

drugs or alcohol nor is there any evidence that he was threatened, physically intimidated, or

punished by any officers.  Likewise, there is no indication in the record that officers made any

promises or misrepresentations to Butler.  While Butler may have been in custody at the time he

consented, he was clearly informed that he did not have to consent and, that if he did consent, he

could revoke his consent subsequently.

Whether an individual's consent is voluntary is a question of fact that must be determined from the totality of the circumstances, including "characteristics of the accused and details of the interrogation." *United States v. Luna,* 368 F.3d 876, 878 (8th Cir. 2004). More importantly, "whether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Garcia,* 197 F.3d 1223, 1227 (8th Cir. 1999). *See also United States v. Jones,* 254 F.3d 692, 695 (8th Cir.2001) ("The precise question is not whether [the defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented."). In addition to other "consent" factors noted above, Butler answered Sergeant Beeman's questions sufficiently so that a reasonable officer would believe Butler was consenting to a search of his apartment.

Prior to consenting, Butler asked Sergeant Beeman if the officers would get a warrant if he refused consent. Sergeant Beeman said that such an action was a "possibility." This statement was neither coercive nor improper. Butler had already conceded to having a personal stash of marijuana in his apartment. As noted by another district court:

> Once the defendant admitted to having marijuana in the apartment,
> the officers had probable cause to obtain a warrant to search the
> apartment. [The officer's] explanation of the options available to
> the defendant at that time was not misleading, unjustified, or
> impermissibly coercive under the Fourth Amendment.

*United States v. Osorio*, 2006 WL 2882496, at *6 (D. Neb. Oct. 6, 2006).

Therefore, in accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING IN PART AND GRANTING IN PART** Butler's *Motion To Suppress Evidence and Statement* [Doc.13] filed May 24, 2017.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ John T. Maughmer
**John T. Maughmer**
**United States Magistrate Judge**